IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PATSY RANEY                                                           PLAINTIFF

v.                            No. 3:15-CV-221-BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                           DEFENDANT

ORDER REMANDING TO THE COMMISSIONER

Patsy Raney brought this action seeking judicial review of the denial of her applications for social security disability benefits. She claims disability with an alleged onset date of April 6, 2012. (R. at 100, 109). Ms. Raney based her disability claims on degenerative disk disease, depression, chronic pain in the hips and legs, and diffused broad-based disk injury. (R. at 59). After a hearing, the administrative law judge (ALJ) denied Ms. Raney's claims. (R. at 68–79). The Social Security Administration's Appeals Council declined to review the case, making the ALJ's decision final. Ms. Raney filed this appeal and consented to the jurisdiction of the Magistrate Judge.

I.   The Commissioner's Decision

At step 1 of the evaluative process, the ALJ determined that Ms. Raney had not engaged in substantial gainful activity since the alleged onset date. (R. at 70). The ALJ found at step 2 that Ms. Raney had severe impairments: degenerative disc disease and hypertension. (R. at 71). The ALJ considered the listings under step 3

of the five step process and found that Ms. Raney's impairments did not meet or equal any listing. (R. at 73).

The ALJ then found that Ms. Raney had the residual functional capacity to perform light work, but with only occasional stooping and crouching and with corrective lenses. (R. at 73). In arriving at this determination, the ALJ found that Ms. Raney's impairments could be expected to cause her symptoms, but also that her statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (R. at 75). The ALJ found that Ms. Raney's daily activities were inconsistent with her alleged limitations and the objective medical evidence. (R. at 76). The ALJ gave great weight to the State agency medical consultants and little weight to Ms. Raney's treating physician. (R. at 76–77).

With testimony from a vocational expert, the ALJ found at step 4 that Ms. Raney could not perform her past relevant work, but found at step 5 that she could work as a fast food worker or cashier and was thus not disabled. (R. at 77-79).

II.  Discussion

This Court reviews the decision of the ALJ to determine if it is supported by "substantial evidence on the record as a whole." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998). The Court will not reverse "merely because substantial evidence exists for the opposite decision." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997) (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)).

Ms. Raney presents several arguments for reversal. She first argues that the ALJ erred in assessing the opinion evidence. Specifically, she maintains that the

ALJ erred in giving little weight to the opinion of her treating physicians, especially the opinions of John Campbell, M.D., her treating specialist, and in giving great weight to the opinions of Bill F. Payne, M.D., and Ronald Crow, D.O., State agency consultants who never examined her.  Second, she argues that the ALJ erred in assessing her credibility.  And third, Ms. Raney argues that the Commissioner erred in failing to review evidence she submitted after the hearing from an appointment with Dr. Campbell on October 24, 2014.  Even though the appointment itself occurred after the hearing, the spinal imaging Dr. Campbell reviewed at that appointment was captured before the hearing.  Ms. Raney argues that the Commissioner should have reviewed that new evidence.

    A.  New Evidence

Because the new evidence affects the analysis of the other medical opinions, the first question is whether this evidence should be considered.  The Appeals Council must consider new and material evidence that relates to the period on or before the date of the ALJ's decision.  Bergmann v. Apfel, 207 F.3d 1065, 1069–70 (8th Cir. 2000).

> To be "new," evidence must be more than merely cumulative of other evidence in the record. To be "material," the evidence must be relevant to claimant's condition for the time period for which benefits were denied. Thus, to qualify as "material," the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition.

Id.

    Ms. Raney points to her visit with Dr. Campbell on October 24, 2014, as evidence that her back condition did not improve after her surgery.  During this

visit, Dr. Campbell evaluated imaging of her back taken at Arkansas Methodist Medical Center in the summer, prior to the hearing. (R. at 61, 442). At the October 24, 2014 visit, Dr. Campbell assessed Ms. Raney for additional surgery based on the images captured prior to her hearing before the ALJ.

The information from the October 24, 2014 visit is not merely cumulative because it adds the professional opinion of one of Ms. Raney's treating physicians, a specialist, to the raw information in the imaging records. The information is material, as well, in that it is an interpretation of Ms. Raney's condition prior to the hearing before the ALJ. While the opinion was rendered more than two months after the hearing, it was based on imaging performed more than one month prior to the hearing. For that reason, the Appeals Council should have considered the records of the October 24, 2014 visit in its review.

The other records provided from visits with physicians after the hearing specifically address Ms. Raney's condition at the time of those visits or relate to events subsequent to the hearing. The Appeals Council appropriately declined to review those records.

B.  Treating Physician Opinions

The ALJ gave little weight to the opinion of John Campbell, M.D., the neurosurgeon who performed Ms. Raney's laminectomy and monitored her recovery. (R. at 76). The ALJ noted that one of the opinions regarding Ms. Raney's lifting capacity was given only days after her surgery. (R. at 76, 397). In another opinion, given about one month after the surgery, Dr. Campbell expressed hope that Ms. Raney would be able to get back to work. (R. at 395). Three months after the

surgery, however, Dr. Campbell opined that Ms. Raney would probably not be able to return to work. (R. at 393). The ALJ considered this later opinion to be inconsistent with Dr. Campbell's previously expressed hope that Ms. Raney would be able to work again. (R. at 77). Further, the ALJ believed that Dr. Campbell's statement invaded the province of the Commissioner, who is tasked with determining disability. The ALJ also found the post-operative opinion inconsistent with the objective medical evidence and Ms. Raney's reported activities of daily living. (R. at 77).

Ms. Raney argues that the ALJ's analysis of Dr. Campbell's opinions is internally contradictory because the ALJ gave greater weight to Dr. Campbell's hope that Ms. Raney could go back to work than to his opinion that MRI results showed little improvement and that she would probably not be able to return to work.

Ms. Raney also argues that Dr. Campbell's opinion is entitled to great weight because he was a treating physician. She points to other evidence in the record that supports Dr. Campbell's opinions. If a treating physician's opinion regarding a claimant's impairment is supported by medically acceptable diagnostic tests and is not inconsistent with other substantial evidence on the record, it will normally be granted controlling weight. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). And generally, more weight is given to a specialist's opinion, such as Dr. Campbell, with regard to issues within that specialty. Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010).

If an ALJ gives little weight to the opinion of a treating doctor, she must give good reason for doing so. Hamilton v. Astrue, 518 F.3d 607, 610 (8th Cir. 2008). Of course, "a treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement." Id. Here, however, that does not appear to be the situation.

The ALJ improperly discounted Dr. Campbell's opinions. The ALJ discredited Dr. Campbell's statement that Ms. Raney "probably will not be able to get back to work" as usurping the Commissioner's responsibility to make a finding of disability. But, in fact, Dr. Campbell's opinion specifically "explained that doctors do not determine disability and in fact this is determined by an administrative law judge." (R. at 393). Dr. Campbell stated that "her applying for disability is probably a good idea" and that she "might want to go ahead and apply for these benefits that might be entitled to her" if "she feels so inclined." (R. at 393). These statements are not conclusory statements of disability, but rather advice to a patient to seek a determination from those entitled to make the determination.

Notably, the ALJ gave credence to Dr. Campbell's statement two months prior that, "[h]opefully she will be able to get back to some type of employment." (R. at 395). That statement, made one month after surgery, is not inconsistent with Dr. Campbell's later opinion that Ms. Raney would probably not be able to return to work. The ALJ emphasized Dr. Campbell's statement "[implying] that he was hopeful the claimant would be able to work" (R. at 77), but did not include Dr. Campbell's note in that same opinion that Ms. Raney's condition had not improved much. (R. at 395).

The ALJ also found that Dr. Campbell's opinions were "inconsistent with the overall objective medical evidence since the surgery and the claimant's reported activities of daily living." (R. at 77). The ALJ's decision does not identify any specific inconsistencies, but does point to various examinations that Ms. Raney underwent after her surgery that showed mild to moderate tenderness in her back, good strength in the lower extremities, the ability to walk, and a lack of swelling in the ankles. (R. at 75–76). It is unclear from the ALJ's decision how these findings are inconsistent with a diagnosis of spinal stenosis, verified by MRIs of Ms. Raney's spine. (R. at 356, 442). Significantly, the ALJ referred to the September 12, 2012 examination performed by Dr. Campbell himself as one of the occasions when Ms. Raney demonstrated good strength in her legs and the ability to walk. (R. at 75, 393). None of the records referenced by the ALJ's decision indicate that the findings of the physical examinations are inconsistent with Ms. Raney's alleged symptoms or their alleged severity.

As to Ms. Raney's reported daily activities, the ALJ found that Ms. Raney could drive, prepare easy meals, maintain her personal care, go shopping for thirty minutes once a week, and perform light housework. (R. at 76). But the fact that a claimant "tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain." Draper v. Barnhart, 425 F.3d 1127, 1131 (8th Cir. 2005). "The test is whether the claimant has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Id. (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)).

7

Light housework and other such activities, standing alone, do not support a finding that a claimant can perform full time competitive work. Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996).

After considering the record as a whole, the Court concludes that the ALJ erred in failing to adequately explain discounting the opinion of Ms. Raney's treating specialist. No demonstrable inconsistencies exist between Dr. Campbell's opinion and the other medical evidence or Ms. Raney's reported daily activities.

C.   State Agency Consultant Opinions

Ms. Raney also argues that the ALJ erred in affording great weight to the opinions of Bill F. Payne, M.D., and Ronald Crow, D.O. Both doctors were medical consultants for the State agency, and neither examined Ms. Raney.

"The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). In this case, the ALJ gave great weight to the State agency consultants' opinions but also found that Ms. Raney was more limited than the State agency consultants had found. (R. at 76). The State agency consultants' opinions contrast not only with Ms. Raney's treating specialist, but also with her primary care physician, Dr. Kemp. Dr. Kemp prescribed Norco and Vicodin for pain on August 28, 2013, over two months after the State agency consultants projected that Ms. Raney would have the RFC to perform light work. (R. at 100-117, 426–27).

Dr. Kemp also reported on June 26, 2014, that Ms. Raney's lower back pain was no better since the surgery two years prior. (R. at 432). In addition, the records of Ms. Raney's visit with Dr. Campbell on October 24, 2014, indicate that

8

her back issues were not resolved at the time of the hearing before the ALJ. (R. at 61). These records directly contradict the State agency consultants' expectations that Ms. Raney would fully recover from her surgery within one year and maintain an RFC for light work.

The State agency consultants' projected RFC is contradicted by substantial medical evidence from Ms. Raney's treating physicians. It is important to note that the consultants did not have the benefit of Dr. Campell's assessment at Ms. Raney's October 24, 2014 visit. The ALJ erred in giving great weight to the opinions of the consultants.

III.   Conclusion

After considering the record as a whole, the Court concludes the ALJ erred in failing to give good reasons for affording little weight to Ms. Raney's treating physicians and giving great weight to non-examining doctors. Furthermore, the Appeals Council should have considered records from Ms. Raney's October 24, 2014 visit to Dr. Campbell.

The decision of the Commissioner is not supported by substantial evidence, and is reversed and remanded for action consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991).

It is so ordered this 8th day of March, 2016.

_____
UNITED STATES MAGISTRATE JUDGE